**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DEREK MILLER,** )<br>)<br>**Plaintiff,** )<br>)<br>vs. )<br>)<br>**VIPIN SHAH, M.D., et al.,** )<br>)<br>**Defendants.** ) | **CIVIL NO. 10-346-GPM-DGW** |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

This matter comes before the Court on a motion for summary judgment filed by Defendants Shan Collins and Zachary Kurtz (Doc. 97). Plaintiff Derek Miller filed a response to the motion for summary judgment (Doc. 98). The Court has reviewed the papers. For the reasons stated below, Defendants' motion for summary judgment (Doc. 97) is **GRANTED**.

## FACTS

Plaintiff filed the instant action on May 10, 2010, for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. The incident giving rise to this lawsuit occurred on December 23, 2009, while Plaintiff was detained at St. Clair County Jail (Docs. 70, 81-1, Ex. A, pgs. 19:22-20-4). On December 23, 2009, Plaintiff was in the day room when he suffered an attack from behind by another detainee. *Id*. The detainee grabbed Plaintiff from behind and slammed Plaintiff to the floor. *Id*. The assault left Plaintiff unconscious for a brief period of time. *Id*. When Plaintiff came to, Plaintiff experienced severe pain in his left shoulder and decreased movement (Doc. 81-1, Ex. A, p. 70:8-19). Later in the day, after the attack, Nurse Barbara

Rodriguez examined Plaintiff's shoulder and determined there were no deformities and all vital signs were normal[1] (Doc. 81-2, Ex. B). Indeed, Nurse Rodriguez relayed her findings to Dr. Vipin Shah that same day. *Id*. As a result of Nurse Rodriguez's findings, Dr. Shah ordered x-rays of Plaintiff's shoulder. *Id*. The x-rays would not be taken, however, until December 28, 2009. *Id*.

In the evening of December 23, 2009, Plaintiff crafted a sling that helped Plaintiff stabilize his arm and shoulder (Doc. 81-1, Ex. A, pgs. 45:10-46:20). Plaintiff utilized his homemade sling for several days, which also eased Plaintiff's pain. *Id*. Eventually, a fellow inmate lent Plaintiff an actual sling, which Plaintiff used for the remainder of his detainment at St. Clair County Jail. (Doc. 81-1, Ex. A, pgs. 45:10-46:20).

The next day, December 24, 2009, Plaintiff requested medical treatment from both Collins and Kurtz, but Plaintiff did not receive a response (Doc. 78). Although Plaintiff denies taking Motrin between December 21, 2009 through January 6, 2010, Plaintiff did have a prescription for Motrin because of tooth pain (Docs. 87, 81-5, Ex. E, 81-1, Ex. A, p.16:5-10). In fact, in the days after the assault, nurses continued to come by Plaintiff's cell and give Plaintiff his Motrin. *Id.* On December 24, 26, and 27, 2009, Plaintiff wrote a sick call. (Docs. 87-2, Ex. A and B, 81-1, Ex. A, pgs. 62:21-63:21; 67:9-68:12).

On December 27, 2009, Dr. Shah examined Plaintiff for his shoulder pain (Doc. 81, Ex. A, pgs 50:2-22). When the x-rays were taken on December 28, 2009, the x-rays revealed a fracture in the distal third of Plaintiff's clavicle with mild displacement (Doc. 81-2, Ex. B). As a result of the x-rays, Plaintiff was moved to the infirmary and an orthopedic consultation was scheduled. *Id*.;

---

[1] Although Plaintiff disputes that a *complete* physical assessment was performed by Nurse Rodriguez on December 23, 2009 (Docs. 87), Plaintiff indicates he simply did not *recall* seeing a nurse on December 23, 2009 (81-1, Ex. A, p. 41:3-15).

Doc. 81-1, Ex. A, p. 59:4-7). Dr. Shah treated Plaintiff's shoulder again on January 5, 2010, and January 8, 2010. *Id*. Ultimately, Plaintiff was treated by an outside orthopedic surgeon on January 27, 2010. *Id*. The orthopedic surgeon ordered no further treatment due to the fact that Plaintiff's shoulder was healing properly. *Id*.

## PROCEDURAL HISTORY

On January 23, 2012, the Court entertained oral argument on Defendant Dr. Vipin Shah's motion for summary judgment. The Court granted Dr. Shah's motion for summary judgment, finding Dr. Shah's treatment of Plaintiff did not constitute deliberate indifference (Docs. 94, 95). On March 13, 2012, Defendants Collins and Kurtz filed the instant motion for summary judgment, which adopts by reference the arguments and exhibits set forth in Dr. Shah's motion for summary judgment and supporting memorandum of law. *See* Docs 81, 82, 97. Collins and Kurtz argue Plaintiff's fractured clavicle does not constitute an objectively serious medical condition, and any delay in medical treatment did not result in serious physical harm to Plaintiff. Indeed, Collins and Kurtz maintain Plaintiff was appropriately treated for his shoulder injury, and therefore, Collins and Kurtz were not deliberately indifferent to Plaintiff's medical need (Doc. 97).

In response, Plaintiff simply adopts the arguments set forth in his response to Dr. Shah's motion for summary judgment filed on October 25, 2011. *See* Docs. 98, 86, 87. Plaintiff maintains there is a genuine issue of material fact as to the seriousness of Plaintiff's condition and whether Defendants acted with deliberate indifference. *Id.*

## LEGAL STANDARD

*Summary Judgment Legal Standard*

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.… A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001).

## ANALYSIS

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. *See also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir.2001).

To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 837);

*Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir.1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir.1997). In light of these four indicators, Plaintiff's fractured clavicle qualifies as a serious medical need.

However, summary judgment is appropriate here because Plaintiff cannot meet the subjective part of the deliberate indifference standard. In order to establish deliberate indifference, a prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer*, 511 U.S. at 837. Inadvertent error, negligence, gross negligence or even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment. *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir.1996); *see also Snipes v. DeTella*, 95 F.3d 586, 590-91 (7th Cir. 1996). Deliberate indifference in the denial or delay of medical care can be shown by a defendant's actual intent or reckless disregard. Reckless disregard is highly unreasonable conduct or a gross departure from ordinary care in a situation in which a high degree of danger is readily apparent. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir.1985).

It is critical to determine whether the denial of medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition," *Snipes*, 95 F.3d at 592, giving rise to a claim of deliberate indifference. *See also Estelle*, 429 U.S. at 104 (holding that deliberate indifference "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

Here, Plaintiff claims Defendants Collins and Kurtz, were deliberately indifferent to injuries Plaintiff sustained from an assault by another inmate. Yet in examining the record in a light most favorable to Plaintiff, the Court fails to see any evidence indicating Kurtz and or Collins denied or delayed Plaintiff's access to medical care. Indeed, the evidence clearly demonstrates Plaintiff received care from various nurses prior to and after Plaintiff complained of his injuries to Collins and Kurtz. Specifically, Plaintiff received Motrin for his pre-existing tooth pain several days before and after the assault.

On the day of the assault, Plaintiff was given an evaluation of his shoulder injury by Nurse Rodriguez. Nurse Rodriguez relayed her report to Dr. Shah. Three days later, Dr. Shah examined Plaintiff. The following day, Plaintiff received a complete round of x-rays. Dr. Shah treated Plaintiff's injury, and ultimately referred Plaintiff to an outside orthopedic surgeon. Nurse Rodriguez and Dr. Shah's actions were anything but unreasonable. Yet the fact that truly torpedoes Plaintiff's deliberate indifference claim is that when the orthopedic surgeon examined Plaintiff, the surgeon concluded Plaintiff's shoulder was healing properly and recommended no further treatment.

In looking at the record in a light most favorable to Plaintiff, the Court fails to see any evidence there was a delay in the evaluation and treatment of Plaintiff's fractured clavicle. Plaintiff

has failed to demonstrate any evidence Kurtz and or Collins consciously disregarded Plaintiff's request for medical care. Plaintiff's claim against Collins and Kurtz fails because Plaintiff cannot meet the subjective component of the deliberate indifference standard.

## CONCLUSION

Defendants' motion for summary judgment (Doc. 97) is **GRANTED**. This matter is **DISMISSED with prejudice**. Each party shall bear its own costs. In accordance with Federal Rule of Procedure 58(a), judgment for this matter is entered on a separate document.

**IT IS SO ORDERED.**
DATED: July 17, 2012

/s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge